Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Yana A. Hart, Esq. (SBN 306499)
yana@westcoastlitigation.com
**Hyde & Swigart, APC**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Office Number:        (619) 233-7770
Office Fax Number:    (619) 297-1022

Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
**Kazerouni Law Group, APC**
245 Fischer Avenue
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Fax: (800) 520-5523

*Attorneys for Samuel Scaife III*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Samuel Scaife III,<br><br>                    Plaintiff,<br>v.<br><br>Navy Federal Credit Union, and Silverman Theologou, LLP<br>                    Defendants. | Case No:   '17CV1819 AJB  JMA<br><br>**Complaint For Damages**<br><br>**Jury Trial Demanded** |

**INTRODUCTION**

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.

3. Samuel Scaife III, (Plaintiff), through his attorneys, brings this action to challenge the actions of Navy Federal Credit Union ("NFCU") and Silverman Theologou, LLP, ("Silverman," collectively "Defendants"), with regard to attempts by Defendants to unlawfully and abusively collect a debt allegedly owed by Plaintiff, and this conduct caused Plaintiff damages.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendants took place in California.

7. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such specific violation.

8. All violations alleged regarding the FDCPA are material violations of the FDCPA as these violations would limit the ability of a hypothetical least sophisticated debtor to make an intelligent choice as to the alleged debt and actions that should be taken to resolve the alleged debt.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692(k), and 28 U.S.C. § 1367 for supplemental state claims.

10. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("Rosenthal Act").

11. Defendant Silverman regularly operates within the county of San Diego collecting consumer debts, and filing hundreds of lawsuits, including one against Plaintiff in the San Diego Superior Court that provides certain underlying facts here ("the state action").

12. The state action, and associated collection actions by Defendants, are the actions that give rise to Plaintiff's claim.

13. Through this action, Plaintiff does not allege that any state court judgment was entered against Plaintiff in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

14. Defendant NFCU regularly operates within the county of San Diego offering credit loans to consumers in San Diego County, and pursue debts on defaulted loans, through litigation if necessary. This lawsuit, and associated collection actions are the actions that give rise to Plaintiff's claim.

15. Because Defendants do business and have the capacity to sue within the State of California, personal jurisdiction is established and venue is proper pursuant to 28 U.S.C. § 1391(b)(1) & (c)(2).

16. A substantial part of the events or omissions giving rise to the claim occurred in San Diego, California against Plaintiff who resides in San Diego, California, and therefore venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

17. At all times relevant, Defendant conducted business within the County of San Diego, the State of California.

### PARTIES

18. Plaintiff is a natural person who resides in the City of San Diego, State of California.

19. Defendant Silverman is located in the City of San Diego, in the State of California.

20. Defendant NFCU maintains branches nationwide, including multiple branches located in the City of San Diego, in the State of California.

21. ***Consumer/Debtor.*** Plaintiff is a natural person allegedly obligated to pay a debt, and is a consumer, as that term is defined by 15 U.S.C. § 1692a(3), and Cal Civ. Code § 1788.2(h).

### *Silverman is a Debt Collector Under FDCPA.*

22. Defendant Silverman is a law firm that uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and are therefore debt collectors as that phrase is defined by 15 U.S.C. § 1692a(6).

23. Defendant Silverman frequently and on regular basis, collects debts on behalf of its clients, including but not limited to Defendant NFCU.

24. Defendant Silverman engages in this debt collector activity by sending debt collection communications, and making telephone communications, to consumers, always alleging that these consumers to owe consumer debts as that term is defined by the FDCPA and California's Rosenthal Act, and always demanding payment of the alleged debt, and for Silverman's clients.

25. Defendant Silverman's own website http://silvermanlegal.com lists Defendant's focus and specialty in "member-friendly" collections that Silverman offers to its clients. *See http://silvermanlegal.com/services-for-credit-unions/.*

26. In fact, Silverman's website offers a variety of "effective collection practices:"

> When a credit union retains our firm for our all-inclusive collections and legal services, the credit union is assigned, and provided the benefit of a team of attorneys, paralegals, and collection professionals to manage the entire collection process. We pride ourselves on being experts in the collection industry. Our staff is well versed in the credit union industry and all credit union collection practices. Silverman Theologou always works diligently on behalf of our credit union clients and as a member of The National Creditors Bar Association (NARCA), we are committed to fairness in the collection process and adhere to the NARCA Code of Professional Conduct and Ethics.
>
> Legal collection services we provide:
> - Legal collection letters to include repossession notices, legal notices, foreclosure notices and statutory bad check letters
> - Contact with members immediately following legal notice letter

- Liaison between repossession company and client
- Handling of all aspects of the repossession process
- Handling of all aspects of the auction process
- The filing of small claims and circuit court lawsuits
- The preparation and monitoring of promissory notes
- Obtaining of judgments
- Preparation and execution of bank attachments
Preparation and execution of wage garnishments
- Recommendation of accounts for charge off
- Recommendation of accounts for work out agreements per credit union guidelines
- Detailed month end status reports outlining the opening balance, current balance, last action taken and complete history of the account

*See http://silvermanlegal.com/services-for-credit-unions/.*

27. Further, according to Defendant Silverman's own website, Defendant Silverman "uses one of three available options to collect the delinquent assessment: non-judicial foreclosure; judicial foreclosure; and a civil suit. Each collection method has its own advantages and disadvantages and we will tailor our collection methods based on the amount of the delinquent assessment and status of the homeowner's mortgage and to meet the homeowners association's needs." *See http://silvermanlegal.com/services-for-credit-unions/.*

**Defendant Silverman and Defendant NFCU are "Debt Collectors" Under the Rosenthal Act**

28. Both Defendants, in the ordinary course of business, regularly, on behalf of themselves, or others, engage in debt collection as that term is defined by California Civil Code § 1788.2(b), are therefore debt collectors as that term is defined by California Civil Code § 1788.2(c).

29. Specifically, Defendant Silverman is a debt collector pursuant to Cal. Civ. Code § 1788.2(c) because it regularly collects debts on behalf of itself and its clients as fully described above.

30. In this particular case, Defendant Silverman collected a debt on behalf of NFCU.

31. Defendant NFCU is a debt collector as the term defined under Cal. Civ. Code § 1788.2(c) because it regularly collects debts on behalf by sending collection letters, freezing accounts, reporting delinquencies to credit reporting agencies, filing lawsuits often through hiring a law firm, garnishing wages, threatening legal actions in attempt to collect, obtaining judgments against debtors. Here, NFCU collect on its debts by hiring a law firm, Silverman, authorizing Silverman to act on its behalf, directing Silverman to file cases and/or collecting on judgments for various debts that NFCU owns.

32. NFCU regularly holds itself out to the public as an entity that collects debts in a form recognized by the California legislature and California's debt collection statute, the California Rosenthal Act, that is, through "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person" as "debt" is defined by Cal. Civ. Code § 1788.2(d).

33. NFCU offers loans to military families; finances mortgages, vehicles, and boats; offers student and personal loans, checking, savings, and money market accounts.

34. When consumers fall behind on repayment of their loans, NFCU initiates collection efforts including but not limited to sending correspondences in attempt to collect debt, assess late fees and interests, freezing accounts, reporting debt on individual's credit reports, obtains judgments, and garnishes wages

35. NFCU's collection efforts described above are all regulated by California's Rosenthal Act, pursuant to Civ. Code § 1788.2(d).

36. At times, NFCU also files cases in San Diego Superior Court against consumers to collect on various debts in relation to homeowner association fees or other financial obligations owed or allegedly owed to NFCU.

37. In its debt collection efforts, within the year 2017, NFCU has filed over 40 lawsuits in San Diego state court, and engaged in an abundance of activity to collect debts in California that did not result in litigation, but that is defined by the California's Rosenthal Act as debt collection.

38. Once NFCU obtains a judgment against debtors, it then pursues to collect on judgments by conducting a debtor's exam regarding debtor's assets, filing a memorandum of costs and writ(s) of execution with the court, and then collecting on debtor's debt through levying debtor's assets.

39. NFCU's acts and practices in collecting on their own debts, including corresponding with debtors, litigating cases, conducting judgment debtor exam(s), filing memorandum(s) of costs, and subsequently levying debtor's accounts constitute attempts to collect debts, as described by Cal. Civ. Code § 1788.2(b), and thus, Defendant NFCU is a debt collector under Cal. Civ. Code § 17882(c).

**This Case Involves "Consumer Debt"**

40. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person to another person, and is, therefore a "debt" as that term is defined by California Civil Code §1788.2(d), and a "consumer debt" as that term is defined by California Civil Code §1788.2(f).

41. Specifically, this case arises out of delinquent financial obligations allegedly owed by Plaintiff to Defendant NFCU in relation to NFCU loans. As such,

this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

42. These financial obligations were primarily for personal, family or household purposes and are therefore a "debt" as that term is defined by 15 U.S.C. §1692a(5).

## FACTUAL ALLEGATIONS

43. Plaintiff is a military veteran, previously serving in the U.S. Navy.
44. Sometime prior to May 2014 Plaintiff allegedly opened two loans with Defendant NFCU.
45. As it is presently irrelevant to this action, Plaintiff takes no position as to whether any financial obligations or amounts of the loans were valid.
46. One of the Defendant NFCU's loans was for an extension of credit relating to a certain vehicle, in the amount of $27,249.00, allegedly established on March 1, 2013. ("Auto Loan").
47. Defendant NFCU's second loan was in the amount of $26,233.26, and allegedly established on or about December 6, 2013 ("Personal Loan").
48. Both loans related were for personal, family, or household purposes.
49. Upon information and belief Defendant NFCU required that its loans contain an insurance coverage in case of a disability or a discharge from the military.
50. In May 2014, Plaintiff received an honorable discharge from the U.S. Navy due to a service-connected disability.
51. As a result of Plaintiff's honorable discharge, Plaintiff notified NFCU that he intended to use the insurance that was in the effect on the second loan, and continued making payments on the auto loan since NFCU notified Plaintiff did not have insurance on the car loan.
52. NFCU's representations regarding the car loan were false since NFCU requires to cary an insurance, and Plaintiff paid NFCU for the insurance on both loans.

53. NFCU then froze all Plaintiff's accounts since it could not locate Plaintiff's signed promissory note, and compelled Plaintiff to execute promissory note with a threat to keep the accounts frozen.

54. Upon Plaintiff's request to use the insurance on the Personal Loan, Defendant NFCU notified Plaintiff that it unilaterally cancelled Plaintiff's insurance because Defendant NFCU allegedly did not receive Plaintiff's signed promissory note.

55. However, without a signed promissory note, Defendant NFCU would not have authorized Plaintiff's loan.

56. For months following Plaintiff's disability and separation with the U.S. Navy, Plaintiff disputed Defendant NFCU's unilateral cancellation of Plaintiff's insurance over multiple telephone calls to the Defendant NFCU.

57. Eventually Defendant NFCU noticed a mistake in their documentation, and added the insurance back on Plaintiff's account, requesting that Plaintiff completes some additional paperwork relating to the insurance.

58. Plaintiff thereafter, in late 2014 (following the telephonic conversation with Defendant), filled out insurance documents and mailed it to Defendant NFCU with the understanding that Defendant NFCU will use the insurance retroactively as promised.

59. Plaintiff's mailed documents were not returned as undelivered.

60. Subsequently, per conversation with Defendant NFCU, Plaintiff believed that Defendant used its insurance for the Personal Loan since Plaintiff was on disability and could not make any payments on the loan.

61. Plaintiff, however, continued making payments on the Auto Loan.

62. A few months after submitting insurance documents for Defendant NFCU to correct its error, Plaintiff contacted Defendant NFCU again, and learned that Defendant NFCU no longer intended to effectuate insurance on Plaintiff's Personal Loan account.

63. Despite Plaintiff's desperate attempts to resolve the issue with Defendant NFCU, Defendant's representatives made it clear that there was nothing Plaintiff could do in order to use the benefits of the insurance Plaintiff previously purchased and paid for, despite Defendant's error.
64. As a result, Plaintiff allegedly fell behind on his financial obligations on his Personal Loan; however, he continued making payments for the Auto Loan.
65. Thereafter, Defendant NFCU began calling Plaintiff repeatedly with respect to Plaintiff's Personal Loan.
66. On multiple occasions, in 2015, Plaintiff notified Defendant NFCU that Plaintiff was a disabled veteran and could not deal with this stress especially since Defendant NFCU wrongfully and unilaterally cancelled Plaintiff's Personal Loan insurance, despite its promises to Plaintiff.
67. Despite Plaintiff's repeated requests to stop these harassing calls, Defendant NFCU's representatives continued calling Plaintiff in 2015.
68. Plaintiff continued making payments on his Auto Loan.
69. In April 2015, Defendant NFCU (as usual) accepted Plaintiff's payment on the Auto Loan.
70. In May 2015, Plaintiff attempted to make another timely monthly payment on his Auto Loan to Defendant NFCU at one of the Defendant NFCU's branches.
71. At that time Defendant's representatives notified Plaintiff that Defendant NFCU combined the two loans, and Plaintiff could no longer remain current on his Auto Loan.
72. Defendant's representative further falsely notified that Defendant NFCU was "suing" Plaintiff for both loans and could not take any payments from Plaintiff.
73. However, Defendant NFCU's representative's statements were false because Defendant did not file any suits until October 21, 2016.

74. Defendant NFCU simply intended for Plaintiff to become delinquent on both account in order to obtain a judgment against Plaintiff on both accounts.

75. Thereafter, Defendant NFCU unilaterally combined the two loans and wrongfully refused to accept payments on the Auto Loan from Plaintiff.

76. As a result, Plaintiff, a disabled military veteran, undergone a tremendous amount of stress as a result of Defendant NFCU's unfair treatment and failure to accept payments on Plaintiff's Auto Loan account.

77. Sometime in 2016, Defendant NFCU retained Defendant Silverman to collect on behalf of the NFCU and file a collection action in the San Diego Superior Court.

78. Thereafter, sometime on or about October 21, 2016, Defendant Silverman, on behalf of and with the instruction of Defendant NFCU, filed a complaint in the San Diego Superior Court, Case No 37-2016-00037115-CU-BC-CTL (State Action).

79. Defendants thereafter, jointly proceeded with litigation of the underlying claims.

80. After Plaintiff was served with the State Action Complaint, Plaintiff retained the undersigned counsel ("Attorney") to represent him in a defense of the underlying claims.

81. Plaintiff's Attorney with Plaintiff's authorization and on Plaintiff's behalf filed and served an Answer in the underlying State Action on or about February 2, 2017.

82. During discovery phase of the underlying proceeding, while Defendant Silverman and Defendant NFCU were fully aware that Plaintiff is being represented by Attorney, Defendant Silverman, on behalf of and with authorization of Defendant NFCU contacted Plaintiff.

83. On July 18, 2017, Defendant Silverman (while acting on behalf of Defendant NFCU), called Plaintiff to "discuss [Plaintiff's] hardship."

84. Defendant Silverman's representative also stated that Defendant Silverman and NFCU wanted to know what Plaintiff would be comfortable paying.
85. Plaintiff, in shock and disbelief that he is being contacted by Defendant Silverman, while Defendant Silverman and Defendant NFCU are well aware that he is being represented, stated that he could not discuss any payments because he has an attorney and will need an advice from his lawyer.
86. Defendant Silverman, instead of immediately apologizing for contacting a represented party, continued to insist and demand Plaintiff's answers regarding Plaintiff's ability to amen payments because Defendant Silverman and NFCU needed a dollar figure to see if Plaintiff qualifies for any offer of settlement.
87. Plaintiff again refused to provide answers since he needs an attorney to be involved and he did not trust Defendant Silverman.
88. Defendant Silverman's representative, however, stated that he was advised by other attorneys that the representative could call and discuss the hardship and dollar amount with Plaintiff.
89. During the telephone conversation, Defendant Silverman's representative further pressured Plaintiff into providing Defendants with Plaintiff's financial information because this was "once in a lifetime" offer.
90. As a result of Defendant Silverman's insistent demands and improper debt collection efforts, Plaintiff suffered emotional distress and mental anguish because he felt frustrated, stressed, anxious, rattled, angry, embarrassed, and emotionally volatile.
91. Plaintiff, a disabled U.S. veteran, felt as if no laws applied to Defendants NFCU and Silverman because of their joint and blatant disregard of the fact that Plaintiff was represented and specifically requested Defendants to speak with Plaintiff's Attorney.

92. As a result of Defendant NFCU's misconduct, Defendant NFCU violated Cal. Civ. Code § 1788.17, through incorporation of 15 U.S.C. 1692(e), 1692e(10), 1692c, 1692f, and 1692d.

93. The Rosenthal Act prohibits debt collectors and original creditors from making any false or misleading representations to consumers under Civ. Code § 1788.17, through incorporation of 15 U.S.C. 1692(e), 1692e(10).

94. Here, Defendant NFCU initially falsely stated that Plaintiff did not submit the signed promissory note, which Plaintiff did, then falsely stated to Plaintiff in May of 2015 that Defendant NFCU is "suing" Plaintiff, even though no lawsuit was filed until October of 2016.

95. The Rosenthal Act prohibits debt collectors and original creditors from engaging into unfair and unconscionable practices in attempts to collect on debts under Civ. Code § 1788.17, through incorporation of 15 U.S.C. 1692f, 1692d.

96. Defendant NFCU's misconduct was especially egregious and involved unfair and unconscionable practices because (a) Defendant NFCU, at all times, knew that Plaintiff was a disabled veteran, subject to Defendant's insurance which Defendant NFCU unilaterally terminated; (b) Defendant NFCU, subjected Plaintiff to continuous harassment and calls despite Plaintiff's requests that Defendant NFCU discontinues contacting and pressuring Plaintiff; (c) Defendant NFCU wrongfully refused to accept Plaintiff's payments on the Auto Loan, placing Plaintiff in default on the Auto Loan; and (d) wrongfully contacting Plaintiff (by engaging Defendant Silverman) while knowing that Plaintiff was represented by an Attorney, during litigation, and insisting on Plaintiff's answers despite Plaintiff repeatedly stating that he has an attorney.

97. Defendant Silverman also violated the Rosenthal Act, and the Fair Debt Collection Practices Act by contacting Plaintiff while Defendant Silverman

knew Plaintiff was represented, and insisting on Plaintiff's immediate answers regarding Plaintiff's hardship.

98. Defendant Silverman's insistent "once in a lifetime" offer despite Plaintiff repeatedly stating that he needs to speak with his attorney was in violation of 15 U.S.C. § 1692c(a)(1), 1692c(a)(2), 1692f, 1692d, and Cal. Civ. Code § 1788.17 through incorporation.

*Vicarious Liability Under the Rosenthal Act*

99. At all relevant times, Silverman was an authorized agent of NFCU as NFCU's attorneys.

100. The actions of the attorney are to be inputed to the client on whose behalf the are taken.

101. A relationship between attorney and the client is a "principal-agent" relationship

102. At all relevant times, the actions taken by Silverman were in the scope of the agency relationship and in furtherance of NFCU's interest and therefore are imputed upon NFCU.

103. Because prior to these above described debt collection activities occurring, NFCU had retained Silverman as NFCU's legal representative for the sole purpose of collecting NFCU's debts, and because Silverman was NFCU's legal representative at the time the above described debt collection activities took place, and even continues to be NFCU's legal representative today.

104. Because the above described debt collection activities, acts and omissions of Silverman were conducted by Silverman at the direction and control of NFCU, Silverman's activities, acts and omissions are imputed on NFCU under the common law doctrine of agency, that is, respondeat superior, generally, and vicarious liability, specifically. Consequently, any liability of Silverman is also the liability of NFCU, as Silverman was attempting to

collect debts for NFCU and acting at the direction and control of NFCU, when those illegal activities, acts and omissions occurred.

105. Defendant NFCU is therefore, vicariously liable for Defendant Silverman's actions under the Cal. Civ. Code § 1788.13(e).

106. Further, because Defendant NFCU directed Defendant Silverman to harass Plaintiff, in violation of Cal. Civ. Proc. § 1788.17 through incorporation of the federal Fair Debt Collection Practices Act as described above, Defendant NFCU also violated the Rosenthal Fair Debt Collection Practices Act, through California Civil Code § 1788.17 which incorporates Sections § 1692c, 1692d, and 1692f.

107. Due to Defendants' actions, Plaintiff has suffered actual damages in the form of mental anguish type damages which manifested in several symptoms including but not limited to: stress, anxiety, sleeplessness, nervousness, restlessness, irritability, frustration, and anger all impacting their work and personal relationships.

## CONTINUING VIOLATION

108. Courts have held that the "continuing violation" doctrine applies to FDCPA and RFDCPA claims. *See Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003); *Sierra v Foster & Garbus*, 48 F. Supp. 2d 393, 395 (S.D. NY 1999); *Komarova v. National Credit Acceptance, Inc.,* 175 Cal. App. 4th 324, 344 (2009).

109. Defendant, NFCU's abusive practices related to the two loan accounts constitute a continuing violation, designed to victimize Plaintiff.

110. Defendant NFCU's harassing acts, placing Plaintiff in default on the Auto Loan account, and thereafter collecting on both loans through litigation relate to Defendant NFCU's continued harassing practices.

111. There is no gap in Defendant NFCU's continued collection efforts, and Defendant NFCU's conduct only continues to escalate.

112. Here, Defendant NFCU's actions and wrongful conduct continued from 2014 through and including the present.

## CAUSES OF ACTION

### COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

### 15 U.S.C. §§ 1692 ET SEQ.

### [AGAINST SILVERMAN ONLY]

113. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

114. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA by Defendant Silverman, only, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., including but not limited to Sections § 1692c(a)(1), 1692c(a)(2), 1692d, and 1692f.

115. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant Silverman.

### COUNT II

### ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (ROSENTHAL ACT)

### CAL. CIV. CODE §§ 1788-1788.32

### [AGAINST SILVERMAN AND NFCU]

116. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

117. As fully described above, both Defendants jointly and severally violated Cal. Civ. Code § 1788.13(e) and Cal. Civ. Code § 1788.17 through incorporation of the FDCPA Sections § 1692c, 1692f, 1692d. *See* 2 Within Summary of Cal.

Law (9th Ed. 1987) (explaining that a principal may be directly liable for authorizing or directing an agent's wrongful acts).

118. Defendant NFCU is also vicariously liable for Defendant Silverman's actions because Silverman acted within the scope of Defendants' agency, and authority of Defendant NFCU.

119. As fully described above, Defendant NFCU also violated Cal. Civ. Code § 1788.13(e) and Cal. Civ. Code § 1788.17 through incorporation of the FDCPA Sections § 1692e, 1692e(2), 1692e(10), 1692f, 1692d.

120. The foregoing acts and omissions constitute numerous and multiple violations of the Rosenthal Act, including but not limited to each and every one of the above-cited provisions of the Rosenthal Act, Cal. Civ. Code §§ 1788-1788.32

121. As a result of each and every violation of the Rosenthal Act, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from each and every defendant, jointly and severally.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and Plaintiff be awarded damages from Defendant, as follows:

### FIRST CAUSE OF ACTION
### FDCPA (AGAINST SILVERMAN ONLY)

- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);
- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);
- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3); and
- Any other relief this Court should deem just and proper.

## SECOND CAUSE OF ACTION

## ROSENTHAL ACT (AGAINST BOTH DEFENDANTS)

- An award of actual damages pursuant to California Civil Code § 1788.30(a);
- An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);
- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c).
- Treble damages pursuant to Cal. Civ. Code § 3345; and
- Any other relief this Court should deem just and proper.

122. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted,

**Hyde & Swigart, APC**

Date: September 6, 2017          By: /s/Yana A. Hart, Esq.
                                 Yana A. Hart, Esq.
                                 Attorneys for Plaintiff